## 76456. DON SWANN SALES CORPORATION v. PARR et al.
(375 SE2d 466)

DEEN, Presiding Judge.

In 1969 appellee Parr became associated with appellant Don Swann Sales Corp. (Swann), a closely held corporation selling paper products and related items to such businesses as Waffle House and Six Flags Over Georgia. The evidence is undisputed that a Mr. Priddy, president of the corporation at the time of the incidents giving rise to the instant case, had purchased the corporation from its founder and former president and owned 100 percent of its stock. Although a supplemental agreement between Swann and Parr alluded to the possibility that some stock might at some unspecified time be offered to Parr, the record contains no allegation or evidence that such an offer was ever actually made, and Parr affirmatively testified that he never "owned any stock or other ownership interest" in appellant corporation. The purchasing arrangements between Swann and its customers consisted of "blanket orders" which set the prices at which customers could purchase items from Swann during the term of the "blanket order," which was renegotiated approximately annually. These agreements contained no restrictions prohibiting the purchase of such items from suppliers other than Swann.

Parr rose to the position of sales manager and was subsequently named a vice-president (one of four) and director. Parr testified, however, that he never attended a directors' meeting and that to his knowledge none was ever held; and that, moreover, he was required periodically to sign "minutes" prepared by Priddy. In December 1974, at the request of Priddy, Parr executed an "Employment Agreement" prepared by Swann's attorney, whereby he agreed to represent no other company, to devote full time and efforts to Swann, and to conduct himself in such manner as to reflect credit upon Swann. Under this document he further agreed that, in case of termination of his employment (which, under the terms of the agreement, could be accomplished merely by either party's giving the other thirty days' written notice), he was not to engage in any capacity in a competing business within a 100-mile radius of Atlanta for a period of two years and was to return to Swann any customer lists or other confidential documents that he might have in his possession. His compensation was to

consist solely of commissions based on specified percentages of gross profit, as outlined in the agreement; "gross profit" was defined therein as the difference between invoice and selling price, without any deductions for quantity discounts, free goods, or cash discounts. Further, under the agreement, Parr was to have no authority to extend credit without express authorization by Swann, and he was to have no responsibility for, and to be subject to no deductions in income for, a purchaser's default. Two employees, Chitwood and Harvil, worked exclusively for Parr and assisted in servicing his accounts; their pay was to be computed as a specified percentage to be deducted from Parr's commissions.

On March 29, 1984, Parr submitted written notice of resignation, effective the preceding day. On that same day Chitwood and Harvil also submitted resignations effective March 28, and several days later the three set up PHC Distribution Merchants, Inc. Several of Parr's customers, including Six Flags and Waffle House, ceased to order from Swann and began doing business with the new corporation, which provided services of the same sort as those provided by Swann. Several other customers subsequently followed suit. Parr testified by affidavit that his resignation was due to Swann's making unauthorized deductions from his commissions by unilaterally altering the definition of "gross profit," supra. Chitwood and Harvil testified that their resignations were due to unauthorized deductions and to undesirable working conditions, including, with respect to Harvil, sexual harassment.

Some fifteen months after the resignations and the formation of PHC, Swann filed an action against Parr, alleging (1) that the latter had breached the employment agreement by, *inter alia*, failure to give thirty days' notice of termination, failure to allow confidential documents to remain the sole property of Swann, failure to devote full time and efforts to Swann and to conduct himself in a manner that would reflect credit on the company, and violation of the covenant not to compete; (2) that Parr had breached his common-law fiduciary duties to the company; and (3), (4) that he had tortiously interfered with the contractual relations between Swann and its customers and its employees. Appellant subsequently sought to add a fifth count alleging tortious misconduct (burglary and unauthorized use of current price lists). The trial court is holding this court in abeyance pending the outcome of this appeal.

Plaintiff/appellant Swann sought an interlocutory injunction to enforce the covenant not to compete. The trial court denied the motion on the grounds, *inter alia*, that the restrictive covenant was overly broad and unfairly restricted competition, and found that the contract contained no severability clause but was entire. The trial court further held that, as Parr alleged, Swann had breached the em-

ployment agreement by unilaterally altering the method of computing compensation, and that the contract was therefore void and unenforceable. The Supreme Court affirmed without opinion, pursuant to Rule 59. *Don Swann Sales Co. v. Parr* (Case No. 43864, aff'd without opinion Oct. 29, 1986), 256 Ga. XXVI (1986). Parr moved for summary judgment on the remaining counts of the complaint as a whole, or in the alternative for partial summary judgment with respect to each count. The trial court granted the motion, and Swann appeals, contending that there remained genuine issues of material fact with regard to each count. *Held:*

1. Our examination of the entirety of the lengthy record in the instant case persuades us that the trial court acted properly in granting summary judgment as to appellant's claim based upon appellee Parr's alleged breach of the "post-termination covenants" of his employment contract, appellee Parr's alleged breach of his fiduciary duty, and the alleged tortious interference with appellant's contractual relations; and that appellant's second, third, and fourth enumerations of error are without merit. We find no competent evidence that Parr ever disclosed confidential information to competitors, represented any competing firm, interfered with any existing contractual relations between Swann and its employees or customers, or breached any fiduciary duty of any sort during his fifteen-year association with Swann. Appellant itself acknowledges that Parr, through his own efforts, produced one-third of the company's revenues from sales, in addition to supervising the remainder of its sales operation; in light of this unrefuted evidence of Parr's productivity, one would think he would have insufficient time left for committing the alleged breaches of contract or confidentiality. Swann's current president, Priddy, admitted having had shouting matches with Parr over the former's interpretation of "gross profit" with respect to the basis of the compensation due Parr, Chitwood, and Harvil. The trial court properly granted summary judgment on those issues.

2. Genuine issues of material fact remain, however, as to the merits of appellant's remaining claims, which are based upon appellee Parr's alleged breach of his employment contract by his failure to give appellant "at least one (1) month's notice" of the termination of his employment and by failing to "return to [appellant] all price lists, customer lists, written or printed matter concerning the customers, prices, products of The Company. . . ." In denying the interlocutory injunction, the trial court had found that appellant could not enforce the employment contract because appellant was itself in material breach of the contract by virtue of its unilateral alteration of the method of computing appellee Parr's compensation. On summary judgment, however, the evidence of record must be construed most strongly in favor of appellant as the non-moving party. See *Hinson v.*

*Woodard*, 246 Ga. 465 (271 SE2d 860) (1980). When this is done, an issue of fact remains as to whether appellant was in material breach of the employment contract or whether the compensation provisions had been modified by the parties' mutual departure therefrom. See OCGA § 13-4-4.

The burden was upon appellees, as the movants for summary judgment, to show that appellant had suffered no harm from Parr's alleged breaches of his employment contract. Nothing in the record shows that appellees met this burden. Furthermore, the lack of any evidence of harm to appellant would not constitute a viable basis for granting appellees' motion for summary judgment. "In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." OCGA § 13-6-6. See *Bishop v. Intl. Paper Co.*, 174 Ga. App. 863 (332 SE2d 12) (1985); *Bradley v. Godwin*, 152 Ga. App. 782, 784 (3) (264 SE2d 262) (1979). Accordingly, the trial court erred in granting summary judgment in favor of appellees as to appellant's claims for the so-called "pre-termination breaches."

3. We note that appellee had filed a counterclaim in the action below, and that this counterclaim remained pending at the time he filed his motion for summary judgment. The trial court's order granting the motion makes no mention of the counterclaim other than to authorize the addition of Priddy as a defendant, and we therefore presume that the counterclaim is still pending in the court below and is not affected by our ruling on the motion for summary judgment.

*Judgment affirmed in part and reversed in part. Carley and Sognier, JJ., concur.*

DECIDED OCTOBER 18, 1988 —
REHEARING DENIED NOVEMBER 10, 1988 —

*Nolan B. Harmon, Archer D. Smith III, T. M. Bridges*, for appellant.

*Porter & Foster, J. Alexander Porter, Simuel F. Doster, Jr.*, for appellees.