A94A1920. SAVANNAH COLLEGE OF ART & DESIGN, INC.
v. NULPH.
(453 SE2d 80)

BLACKBURN, Judge.

Appellant Savannah College of Art & Design, Inc. (SCAD) appeals the trial court's grant of plaintiff Robert G. Nulph's motion for directed verdict, the trial court's denial of its motion for directed verdict, and several other alleged errors made during the trial of this case. The underlying dispute arose out of SCAD's early termination of Nulph's employment contract, under which Nulph was employed as a professor and department head with SCAD.

The termination provisions of the employment contract required that a termination based on the listed causes be considered "by a committee consisting of the Vice President for Academic Affairs, the Executive Vice President, two members of the Board of Trustees, and the President." The contract further provided that "[i]n all cases where the facts are in dispute, the faculty member involved has the opportunity to be heard by the joint committee in his or her own defense. The faculty member will be informed before the hearing of the charges against him or her. He or she will be permitted to have with him or her an adviser of his or her own choosing who may act as counsel. A full stenographic record of the hearing will be made available to the parties concerned.

"In cases involving professional incompetence, the faculty member involved may introduce the testimony of other scholars in the same and related fields. The final decision in all cases rests with the Board of Trustees."

In the present case, Nulph was terminated after a telephone conference between the president, the executive vice president, and two members of the board of trustees. The vice president of academic affairs did not participate in the telephone conference, but she was consulted by the executive vice president prior to it. The committee determined that the facts upon which Nulph's termination was based were not in dispute, and therefore, Nulph was not entitled to a hearing as outlined in the employment manual.

1. SCAD first enumerates as error the trial court's failure to grant its motion for directed verdict arguing that Nulph was properly terminated in that there were sufficient undisputed reasons for his mid-

contract termination and that the college followed its own termination procedures to an extent sufficient to provide a full opportunity for Nulph to know the charges against him and to provide him an opportunity to respond to those charges before the committee and the Board of Trustees, acting through its Executive Committee. However, there was no evidence that Nulph was informed of the specific charges resulting in his termination nor was he given any opportunity to defend against those charges. Upon learning of his termination, Nulph requested, in writing no less than three times, that he be allowed to respond to the charges against him. He further informed SCAD that the facts were in dispute with regard to allegations of his conduct and that he wanted to present evidence supporting his actions. SCAD unilaterally decided that the facts were not in dispute and denied Nulph any hearing. Therefore, SCAD failed to follow the procedures set forth in its employment contract, and the trial court did not err in denying SCAD's motion for directed verdict.

2. The trial court granted Nulph's motion for directed verdict as to liability for breach of contract, finding that the contract clearly and unambiguously required that the final decision to terminate professors rested with the board of trustees and not with a committee. SCAD enumerates this determination as error.

The employment contract allowed a committee to consider termination where it was based on certain listed causes. The contract further provided that in all cases the final decision rested with the board of trustees. SCAD argues that the committee listed in the employment contract happened to be made up of a majority of the voting members of the executive committee of the board of trustees, thereby making a decision of that committee, a decision of the board of trustees. We must agree with the trial court that this is clearly not the intent of the provisions contained in the employment contract drafted by SCAD.

"The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. The trial court was correct in determining that the employment contract required termination decisions to rest with the board of trustees rather than a committee. Therefore, the trial court did not err in granting Nulph's motion for directed verdict.

3. The trial court found that SCAD's breach was not merely a procedural breach of contract, for which only nominal damages would be recoverable, but a substantive breach because a termination could only have been made by the board of trustees. SCAD's third and fourth enumerations of error assert that this determination was erroneous. SCAD argues that, if there was a breach, it was merely proce-

dural requiring only nominal damages. This is not a situation where termination only required 30 days notice as in the cases cited by SCAD. See *Belcher v. Thomson Newspapers*, 190 Ga. App. 466 (379 SE2d 204) (1989); *Don Swann Sales Corp. v. Parr*, 189 Ga. App. 222 (375 SE2d 466) (1988). In the present case, SCAD attempted to terminate Nulph outside his presence, without a hearing, without informing him of the charges against him, without even a personal meeting of the committee, and then refused him any opportunity to appeal. Prior to termination, Nulph was entitled to an opportunity to be heard in his own defense. He was also entitled to a decision by the board of trustees. Absent such a decision, Nulph's termination was ineffective. Therefore, the trial court correctly determined that SCAD's breach of the employment contract was substantive rather than procedural.

4. SCAD contends that the trial court made several erroneous evidentiary rulings during trial. However, on appeal, SCAD presents argument and citation of authority with regard to only one evidentiary ruling. Therefore, its other enumerations of error regarding evidentiary rulings are deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2).

SCAD attempted to introduce a photocopy of one page of SCAD's by-laws. However, the trial court properly determined that it failed to lay the proper foundation. See OCGA § 24-7-1.

5. In its final enumeration of error, SCAD contends that the trial court erred in submitting the issue of attorney fees to the jury.

"Bad faith authorizing an award of attorney's fees in a contract action must relate to the conduct of entering the contract or to the transaction and dealings out of which the cause of action arose, which includes not only the negotiations and formulation of the contract but also *performance of the contractual provisions.*" (Emphasis supplied.) (Citation and punctuation omitted.) *Hirsh v. Goodlett*, 196 Ga. App. 127, 128 (395 SE2d 626) (1990). As there was some evidence to support the bad faith damages awarded by the jury, the trial court correctly denied SCAD's motion for directed verdict on the issue.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 16, 1994 —
RECONSIDERATION DENIED JANUARY 12, 1995 — ▮▮▮▮▮▮▮▮▮▮

*Drew, Eckl & Farnham, Arthur H. Glaser, J. Robb Cruser,* for appellant.

*Jones, Boykin & Associates, Harold J. Cronk,* for appellee.