## S97A0605, S97X0608. ELECTRONIC DATA SYSTEMS CORPORATION v. HEINEMANN et al.; and vice versa.

(493 SE2d 132)

FLETCHER, Presiding Justice.

This case involves the misappropriation of trade secrets and the primary issue on appeal is whether the trial court abused its discretion in failing to issue a prohibitive injunction against the use of the misappropriated trade secrets. Because the trial court did not abuse its discretion in imposing a royalty injunction, we affirm.

Mark Heinemann and Patricia Pelling formerly worked for Electronic Data Systems developing computer software. While within EDS's employ, Heinemann and Pelling worked on two programs developed by EDS, AcuPlant and AcuFile. AcuPlant is a capital asset tracking system designed specifically for use by public utilities. AcuFile is a companion program for tax depreciation and tax asset value. Heinemann and Pelling resigned from EDS and the next day formed their own company, PowerPlan Consultants, to sell Power-Plant and PowerTax, software products that performed the same functions as AcuPlant and AcuFile. EDS brought suit against Heinemann, Pelling and PowerPlan. In its answers to special interrogatories, the jury found that Heinemann and Pelling misappropriated EDS's trade secrets; that they currently use those trade secrets in their own products; and that they violated non-solicitation covenants. The jury also found, however, that Heinemann and Pelling had been unjustly enriched, but that they should not be required to pay any damages. EDS did not seek to have this seemingly inconsistent verdict clarified. The trial court declined to enjoin the sale of PowerPlant or PowerTax, but imposed a seven percent royalty for four months. The trial court also enjoined Heinemann and Pelling from soliciting EDS's customers for three days, which was the duration remaining on the non-solicitation covenants. Both sides appeal.

1. EDS filed its direct appeal in the court of appeals. Heinemann and Pelling moved to transfer the case to this court on the basis that the case is within this court's "equity" jurisdiction under Ga. Const.,

Art. VI, Sec. VI, Par. III and the court of appeals granted the motion.[1] We acknowledge that the meaning of equity jurisdiction remains subject to confusion and frustration.[2] This, however, is not a recent occurrence. Equity jurisdiction was problematic for the courts even at a time when the distinction between law and equity was more relevant than it is today.[3] Unfortunately, so long as "equity" continues to be a basis of this court's jurisdiction, these difficulties will remain and will require this court to continue to define equity jurisdiction.

This court has previously interpreted its equity jurisdiction to be invoked only when the propriety of equitable relief is a substantive issue on appeal.[4] This is just such a case — a primary issue on appeal is whether the trial court erred in denying injunctive relief given the jury's finding of misappropriation of trade secrets and current use of those trade secrets by defendants. This issue is in contrast to many restrictive covenant cases in which the substantive issue on appeal is whether the restrictive covenant is too broad in scope or duration.[5] That is a legal issue that usually precedes the issue of injunctive relief and in fact, makes the issue of injunctive relief routine.

2. Heinemann's and Pelling's employment contracts provided that each would not use the trade secrets of EDS in perpetuity. EDS contends that it is entitled to have this contractual provision enforced by injunction without regard to equitable considerations. The trial court did not address this issue in its order and EDS has not shown that it presented this argument to the trial court. Therefore, that argument is not properly before us. Nevertheless, the non-disclosure covenant did not stipulate that it would be enforced by injunction. Even if it had, we are not persuaded that such a provision should divest the trial court of all discretion in fashioning relief.[6]

3. Rather than imposing a prohibitive injunction banning the sale of PowerPlant and PowerTax under OCGA § 10-1-762 (a), the trial court imposed a "royalty injunction" under OCGA § 10-1-762 (b). OCGA § 10-1-762 (b) provides that in "exceptional circumstances" the trial court may condition the future use of a trade secret on payment of a reasonable royalty. In finding exceptional circumstances, the

---

[1] The court of appeals had previously reversed the trial court's grant of summary judgment to Heinemann and Pelling. *Electronic Data Systems Corp. v. Heinemann*, 217 Ga. App. 816 (459 SE2d 457) (1995).

[2] See, e.g., *Saxton v. Coastal Dialysis & Medical Clinic,* 220 Ga. App. 805 (470 SE2d 252), aff'd, 267 Ga. 177 (476 SE2d 587) (1996); *Paul Robinson, Inc. v. Haege,* 218 Ga. App. 578 (462 SE2d 396) (1995).

[3] See, e.g., *Albright v. American Central Ins. Co.,* 147 Ga. 492 (94 SE 561) (1917); *Bernstein v. Fagelson,* 166 Ga. 281 (142 SE 862) (1928).

[4] *Beauchamp v. Knight,* 261 Ga. 608, 609 (409 SE2d 208) (1991).

[5] See, e.g., *Firearms Training Systems v. Sharp,* 213 Ga. App. 566 (445 SE2d 538) (1994); *Klein v. Williams,* 212 Ga. App. 39 (441 SE2d 270) (1994).

[6] See Henry H. Perritt, Jr., *Trade Secrets, A Practitioner's Guide* at 47 (1996 Supp.).

trial court noted the public's interest in competition, EDS's delays in bringing the matter to a resolution, and the adequacy of a royalty to protect the parties' respective interests. In addition, the jury expressly found that Heinemann and Pelling had been unjustly enriched, but also found that the amount of the unjust enrichment was zero dollars. EDS expressly declined to have the jury clarify its inconsistent verdict. From the jury's finding of no damages, the trial court could have concluded that all commercial advantage of the misappropriation had evaporated and denied any injunctive relief under OCGA § 10-1-762 (a). After reviewing the record, we cannot say the trial court abused its discretion in imposing a royalty injunction in this case.

4. Heinemann's employment contract contained a non-solicitation covenant valid for two years following his departure from EDS. Following the jury's finding that Heinemann violated this covenant, the trial court ordered that Heinemann not solicit customers through April 7, 1996, which was two years past Heinemann's departure date, but was also only three days beyond the court's order. The trial court's ruling was mandated by *Coffee System of Atlanta v. Fox*,[7] in which this court expressly rejected a tolling of a restrictive covenant for the period of litigation.

Despite EDS's argument to reconsider *Coffee System*, we remain convinced that *Coffee System* represents sound policy. The courts should hesitate to rewrite private contracts.[8] Judicially providing a tolling provision would effect such a rewrite. Private parties are able to include reasonable tolling provisions in their own contracts.[9] Even without a tolling provision, an employer may seek an interlocutory injunction to enforce a non-competition covenant before the time limit expires during litigation.[10] The majority position similarly declines to provide by judicial fiat a tolling provision to restrict covenants.[11] In light of these considerations, we decline the invitation to overrule *Coffee System*. Therefore, the trial court properly granted enforcement of the non-solicitation covenant only for its duration.

5. In the cross-appeal, Heinemann and Pelling contend that

---

[7] 227 Ga. 602 (182 SE2d 109) (1971).

[8] See *Piggly Wiggly Southern v. Heard*, 261 Ga. 503 (405 SE2d 478) (1991) (where parties did not agree to specific covenant "we are not authorized to rewrite the contract to create such a provision").

[9] See *Paul Robinson, Inc. v. Haege*, 218 Ga. App. at 579 (upholding tolling provision that is triggered by challenge to enforceability of covenant).

[10] See, e.g., *Saxton v. Coastal Dialysis & Medical Clinic*, 220 Ga. App. at 807; *Don Swann Sales Corp. v. Parr*, 189 Ga. App. 222, 223 (375 SE2d 466) (1988).

[11] See, e.g., *Gaylord Broadcasting Co. v. Cosmos Broadcasting Corp.*, 746 F2d 251, 253, nn. 1 & 2 (5th Cir. 1984) (citing cases); Steve D. Shadowen & Kenneth Voytek, *Economic and Critical Analyses of the Law of Covenants Not to Compete*, 72 Geo. L. J. 1425, 1439 & n. 93 (1984).

there was insufficient evidence to support the jury's finding of the existence of specific trade secrets or that Heinemann and Pelling misappropriated those trade secrets. It is well-accepted that computer software may constitute trade secrets.[12] Indeed, Heinemann considered the PowerPlant and PowerTax programs to be "in their entirety trade secret stuff." The evidence at trial, construed most favorably to support the jury's verdict, showed that Heinemann had been the project manager over the development of AcuPlant and that Pelling had been a primary architect of AcuFile. EDS protected these programs through confidentiality agreements with employees and customers and with security measures at their offices. PowerPlan's computer programs performed the same work, in the same way, as EDS's computer programs AcuPlant and AcuFile. The evidence also showed that the day after Heinemann left EDS, he contacted a customer that had submitted a request-for-proposal to EDS and informed that customer of his new company. Heinemann also promised that customer that his new company could provide a program with the same functionality as AcuPlant. The evidence also showed that although EDS had invested more than a year in the development of AcuPlant, PowerPlan had an operational version of PowerPlant in less than five months. This evidence is sufficient to support the jury's finding of the existence of trade secrets and their misappropriation. The jury was not required to believe Heinemann's testimony that he and his new company developed their programs from scratch after leaving EDS.

6. Heinemann and Pelling also contend that the jury's zero dollar damages award constitutes judgment in their favor as a matter of law. Generally, a zero damages verdict does result in a verdict for defendant. In this case, however, the jury did not return a general damages verdict, but answered special interrogatories in which it found that Heinemann and Pelling misappropriated trade secrets and currently use those trade secrets. This verdict does not demand judgment for Heinemann and Pelling as a matter of law.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 3, 1997 —
RECONSIDERATION DENIED DECEMBER 19, 1997.

*King & Croft, F. Carlton King, Jr., Thomas A. Croft,* for appellant.

---

[12] See *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 FSupp. 337 (M.D. Ga. 1992) (construing Georgia law); Peter Quittmeyer, *Trade Secrets and Confidential Information under Georgia Law*, 19 Ga. L. Rev. 623, 670-673 (1985).

*Smith, Gambrell & Russell, Thomas W. Rhodes, William W. Maycock, Jason S. Bell,* for appellees.