**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 21, 2021**

# In the Court of Appeals of Georgia

A21A0887. DANESHGARI et al v. PATRIOT TOWING SERVICES, LLC.

DILLARD, Presiding Judge.

Patriot Towing Services, LLC, filed a lawsuit against Khosrow Daneshgari and Leslie Zotti, seeking monetary damages and injunctive relief based on allegations that they breached a noncompete agreement executed in connection with the sale of their towing service business to PTS. Following the defendants' failure to comply with a preliminary injunction and contempt order, the trial court struck Daneshgari's answer and extended its injunction as to both defendants. On appeal, the defendants contend that the trial court erred in extending its injunction beyond the contractual expiration of the noncompete agreement. For the reasons set forth *infra*, we agree and reverse.

The record shows that, on June 23, 2016, PTS entered into an agreement to purchase the majority of assets belonging to D&D Autow's, Inc., which was a full-service emergency road service and towing company owned and operated by Daneshgari and Zotti. And with the execution of that purchase agreement, the parties also entered into a "Non-Competition, Non-Disclosure and Non-Solicitation Agreement." Specifically, paragraph 2 of that agreement provided:

> Agreement Not to Compete. For a period of four (4) years, commencing on the date hereof Seller and Principal shall not . . . either directly or indirectly, as an owner, partner, joint venture, employee engaged in a managerial or supervisory capacity, independent contractor, consultant, distributor, or shareholder of a corporation . . . engage in, establish, invest in, have an interest in, or associate in any fashion with, or perform any professional services on behalf or, a Competing Business within the Area.

The agreement also defined the "Area" as being within "a one hundred and fifty (150) mile radius of 1830-A Airport Industrial Park Drive, GA 30062," and defined "Competing Business" as a business engaged in substantially the same business as PTS. In addition, paragraph 3—titled "Agreement Not to Solicit Customers"—similarly established a four-year term, during which the defendants would not "(a) solicit on behalf of a Competing Business, any business from any

2

Customer of [PTS]; or (b) attempt to Solicit on behalf of a Competing Business, any business from any Customer of [PTS]."

Given the terms of the agreement, the parties understood that the noncompete period would expire on June 22, 2020; but within a month of the execution of the purchase agreement, the defendants began operating another competing towing business through a company called E-Motorworks, Inc. Consequently, on March 1, 2018, PTS filed a lawsuit against the defendants, seeking monetary damages for breach of contract and injunctive relief to enforce compliance with the noncompete provision. The defendants filed separate answers, but on June 26, 2018, the trial court granted PTS's motion for a preliminary injunction, ordering the defendants to cease violating the noncompete provision.

Despite the preliminary injunction order, the defendants continued violating the noncompete provision. As a result, on February 16, 2019, PTS filed a motion for contempt. A hearing on this motion was delayed after Daneshgari filed a bankruptcy petition in federal court, but the petition was dismissed shortly thereafter. Then, on July 12, 2019, following a hearing, the trial court found Daneshgari in willful civil contempt of the preliminary injunction and ordered him to be incarcerated until he

paid PTS $20,000 in attorney fees. Less than one week later, Daneshgari paid the $20,000 and was released from incarceration.

Nevertheless, following Daneshgari's release, the defendants continued to violate the noncompete provision, and consequently, the trial court's preliminary injunction order. As a result, on January 21, 2020, PTS filed a second motion for contempt and attorney fees. The trial court then held a hearing on this motion on August 10, 2020 (nearly two months after the noncompete period lapsed under the terms of the agreement), during which PTS requested that the court strike Daneshgari's answer, award attorney fees, and further enjoin both defendants from violating the noncompete provision.

At the close of the hearing, the trial court ruled in favor of PTS, and on September 3, 2020, it issued two orders affirming that ruling. The first order found Daneshgari in contempt, struck his answer, entered a default judgment, and ordered him to pay attorney fees. Additionally, the order extended the court's June 26, 2018 injunction, enjoining Daneshgari from violating the noncompete provision "until further order of this Court." The second order found that Zotti had also violated the noncompete provision and similarly enjoined her from violating that provision "until further order of this Court." This appeal follows.

In two enumerations of error, the defendants contend the trial court erred in extending its injunction as to both Daneshgari and Zotti beyond the contractual expiration of the noncompete agreement.[1] We agree.

It is well established that the purpose for granting interlocutory injunctions is "to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case."[2] Furthermore, the decision of whether to grant equitable relief—such as an interlocutory injunction—is "generally a matter within the sound discretion of the trial court, and the trial court's decision should be sustained on appeal when there has been no abuse of that discretion."[3] Nevertheless,

---

[1] The defendants do not contend the trial court erred in finding Daneshgari in contempt, striking his answer, or awarding PTS attorney fees, and so we do not address those aspects of the trial court's September 3 orders. *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823 SE2d 763) (2019) (explaining that the Court will not address potential issue or argument that appellant did not raise on appeal); *Rollins v. Legg*, 179 Ga. 85, 85 (2) (175 SE 382) (1934) ("The plaintiff in his brief does not argue his alleged right to an award of attorney's fees, and this feature of the case is treated as having been abandoned." (emphasis supplied)); *Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 262 Ga. App. 75, 79 (3) (585 SE2d 138) (2003) (deeming issue not argued on appeal abandoned).

[2] *Grossi Consulting, LLC v. Sterling Currency Grp., LLC*, 290 Ga. 386, 388 (1) (722 SE2d 44) (2012) (punctuation omitted); *accord Benton v. Patel*, 257 Ga. 669, 672 (362 SE2d 217) (1987).

[3] *Murphree v. Yancey Bros. Co.*, 311 Ga. App. 744, 746-47 (716 SE2d 824) (2011) (punctuation omitted); *accord Essex Grp., Inc. v. Southwire Co.*, 269 Ga. 553,

the reasonableness of a restrictive covenant is "a question of law, which is subject to de novo review."[4]

Here, in both of its September 3, 2020 orders, the trial court extended its June 26, 2018 injunction order to continue enjoining both defendants from violating the noncompete provision "until further order of this Court[,]" despite the fact that, under the terms of the agreement, that provision expired on June 22, 2020. But the Supreme Court of Georgia has rejected—at least implicitly—the idea that "equity permits a court to extend the period of a non-compete agreement."[5]

---

557 (2) (501 SE2d 501) (1998).

[4] *Murphree*, 311 Ga. App. at 747 (punctuation omitted); *see also McKinley v. Coliseum Health Grp., LLC*, 308 Ga. App. 768, 770 (1) (708 SE2d 682) (2011) ("The construction of a contract . . . presents a question of law for the court, which this Court reviews de novo." (citations omitted)).

[5] *Bearoff v. Craton*, 350 Ga. App. 826, 833 (1) (830 SE2d 362) (2019); *see Elec. Data Sys. Corp. v. Heinemann*, 268 Ga. 755, 757 (4) (493 SE2d 132) (1997) (holding that litigation did not toll a nonsolicitation covenant such that trial court could only grant three-day injunction for remaining time before covenant expired); *Coffee Sys. of Atlanta v. Fox*, 227 Ga. 602, 602 (182 SE2d 109) (1971) (dismissing appeal of trial court's denial of employer's motion to enjoin former employee from violating noncompetition covenant because term of covenant had expired during litigation and the issue was now moot); *Hogan Mgmt. Servs., P.C. v. Martino*, 242 Ga. App. 791, 793 (1) (530 SE2d 508) (2000) (holding that the duration of a covenant not to compete is not tolled during litigation, and when the duration of that covenant has expired, an action seeking injunctive relief under the covenant is moot).

6

Specifically, in *Coffee Systems of Atlanta v. Fox*,[6] a noncompete agreement prohibited an employee from engaging in competitive acts for 12 months following the termination of his employment.[7] After the employee left his job and began engaging in competitive activities almost immediately, the employer sought a preliminary injunction—but during the pendency of the litigation, the noncompete period expired.[8] The employer argued that the litigation tolled the running of the noncompete period, but our Supreme Court rejected this argument, reasoning that "[s]uch an extension would in effect rewrite the one-year feature of the agreement."[9] It then further admonished that "[c]ourts do not make contracts for the parties."[10]

More than 25 years later in *Electronic Data Systems Corp. v. Heinemann*,[11] the Supreme Court of Georgia refused to overrule *Coffee Systems*, and *again* rejected the argument that when a party sues to enforce a noncompete agreement, the litigation

---

[6] 227 Ga. 602 (182 SE2d 109) (1971).

[7] *See id.* at 602.

[8] *See id.*

[9] *Id.*

[10] *Id.*

[11] 268 Ga. 755 (493 SE2d 132) (1997).

itself should toll the terms of the agreement.[12] To the contrary, remaining convinced that *Coffee Systems* represented sound jurisprudence, our Supreme Court expressly reiterated that "[t]he courts should hesitate to rewrite private contracts,"[13] and once again warned that "[j]udicially providing a tolling provision would effect such a rewrite."[14]

In this case, it is undisputed that, under the purchase agreement's explicit terms, the noncompete provision expired on June 22, 2020. Nonetheless, in its two September 3 contempt orders, the trial court extended its June 26, 2018 order, indefinitely enjoining the defendants from violating the noncompete provision. But in doing so, the court essentially rewrote the parties' contract exactly as our Supreme Court has proscribed.[15] And although PTS argues that *Coffee Systems* and *Heinemann* are not applicable because—in contrast to the trial court's ruling in this matter—those cases did not involve a trial court exercising its contempt power, we are not persuaded that this distinction is a meaningful one. Indeed, PTS's narrow reading of

---

[12] *See id.* at 757 (4).

[13] *Id.*

[14] *Id.*

[15] *See supra* note 5 & accompanying text.

8

Supreme Court of Georgia precedent elides the fact that *Coffee Systems* and *Heinemann* specifically involved the exercise of the trial courts' equitable powers and concluded that rewriting a contract exceeded such powers.[16] Moreover, while we certainly understand PTS's (and the trial court's) frustration with the defendants' willful violation of an agreement they entered into voluntarily, we do not agree with its contention that adhering to our Supreme Court's directive that "[c]ourts do not make contracts for the parties"[17] significantly impairs a trial court's contempt power.[18] In fact, as this case aptly demonstrates, a trial court is not without other means to address a party's contempt. Given these circumstances, the trial court abused its

---

[16] *See id.*

[17] *Coffee Sys. of Atlanta*, 227 Ga. at 602; *accord Bearoff*, 350 Ga. App. at 833 (1); *see Benton v. Gailey*, 334 Ga. App. 548, 550 (1) (779 SE2d 749) (2015) ("It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties" (punctuation omitted)).

[18] Even if we *were* inclined to agree with PTS, we are not at liberty to disregard binding precedent merely because PTS disagrees with the results of its straightforward application in this case. *See* Ga. Const., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court [of Georgia] shall bind all other courts as precedents."); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) (holding that "vertical stare decisis dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia"); Bryan A. Garner *et al.*, THE LAW OF JUDICIAL PRECEDENT 155 ("When dealing with binding vertical precedent, a court has no room to decide how much weight or value to give each case.").

discretion in indefinitely enjoining the defendants from violating the noncompete provision beyond its June 22, 2020 expiration.[19] Accordingly, we reverse that aspect of the trial court's September 3, 2020 contempt orders.

*Judgment reversed. Mercier and Pinson, JJ., concur.*

---

[19] *See Heinemann*, 268 Ga. at 757 (4) (holding that litigation did not toll a nonsolicitation covenant such that trial court could only grant three-day injunction for remaining time before covenant expired); *Coffee Sys. of Atlanta*, 227 Ga. at 602 (dismissing appeal of trial court's denial of employer's motion to enjoin former employee from violating noncompetition covenant because term of covenant had expired during litigation and the issue was now moot); *Bearoff*, 350 Ga. App. at 832-34 (1) (citing *Coffee Systems* and *Heinemann* in finding that trial court did not err in refusing to grant an equitable extension of the time period covered by a noncompete agreement).