A05A1983. MALICE v. COLOPLAST CORPORATION.
(629 SE2d 95)

SMITH, Presiding Judge.

Louis Malice, Jr. appeals from the superior court's confirmation of an arbitrator's award in favor of his former employer, Coloplast Corporation, on the ground that Malice violated restrictive covenants in his employment contract.[1] Because we find no evidence that the arbitrator manifestly disregarded the law, we conclude that the superior court properly confirmed the award and affirm.

The record shows that Coloplast Corporation does business worldwide, providing products and services for the medical profession, including wound care, skin care, ostomy supplies, incontinence products, and breast care. Malice, a civil engineer, was originally hired in 1985 as a project engineer by Coloplast's predecessor company, which manufactured and sold post-mastectomy products. Malice eventually became president of Coloplast's Breast Care Division. In October 2001, he signed an executive employment agreement. The agreement includes several restrictive covenants, including the non-compete and nonsolicit covenants at issue in this appeal, and various other provisions designed to protect Coloplast. The agreement also includes an arbitration clause, which provides that all disputes will be submitted to arbitration under the rules of the American Arbitration Association-Commercial Division.

In 2002, Coloplast decided to consolidate its European and American production of post-mastectomy products. The Breast Care Division headquarters remained in Marietta, but Coloplast moved the manufacturing facility to a similar plant located in Germany. Malice was appointed executive vice president of Worldwide Textiles. While performing in his new position, Malice also supervised the final stages of the Breast Care Division, including deconstructing the

---

[1] Malice also appeals from the superior court's denial of his motion to vacate the arbitration award. Because the denial of Malice's motion follows from affirming the confirmation of the arbitration award, we need not analyze it separately.

Marietta facility, and he was still involved in research and development for the Breast Care Division. He was also a member of the Breast Care Management Group and the Corporate Management Group, which met regularly to discuss decisions regarding future development, including new products.

An amendment to the employment agreement was executed in April 2002, extending his original contract and adjusting it to Malice's new responsibilities, and also permitting him to obtain severance pay even if he was not terminated, but chose to leave. Malice gave notice in November 2002 and resigned effective December 2, 2002.

After Malice's resignation, the parties entered into a release and settlement agreement that purported to "fully and finally resolve all matters between them." The agreement included provisions for enhanced severance pay, including an additional six months salary should Coloplast exercise its right to invoke the covenant not to compete in the employment agreement. The settlement agreement also provided that Malice would "continue to abide by the executive employment agreement and reiterated the non-solicit provision."[2]

Coloplast gave Malice notice that it would invoke the noncompete provision in the employment agreement and twice tendered a severance check to Malice, as required by the agreement. Malice returned both checks immediately, and on January 1, 2003, he became a partner in a new business formed to manufacture medical prosthetics. Coloplast then brought suit against Malice in the Superior Court of Cobb County, seeking injunctive relief.

The dispute was removed to arbitration in April 2003. The arbitrator ruled in favor of Coloplast, finding that the restrictive covenants were reasonable and enforceable and that Malice had violated them. The injunctive relief sought by Coloplast was granted: Malice was enjoined from rendering "executive services" for two years to any business directly competitive with the business "conducted," or to Malice's knowledge as of the date of the employment agreement, "contemplated" by the Breast Care Division. He was also enjoined from soliciting any customers or prospective customers of the Breast Care Division, or customers of any other division of Coloplast with whom he had "meaningful, substantive business contact" in the three-year period before his resignation, for the purpose of selling them any products identical or substantially similar to those Coloplast sold, distributed, or contemplated selling or distributing to

---

[2] Interestingly, the settlement agreement also provides that Malice acknowledges that he has read and understood all its provisions and that he has been advised in writing to consult his own counsel regarding its provisions.

Malice's knowledge as of the date of his executive employment agreement. Coloplast then sought confirmation in superior court, and Malice moved the court to vacate the arbitrator's award. The superior court confirmed the award and denied Malice's motion.

In his sole enumeration of error, Malice contends that the noncompete and nonsolicit covenants in his employment agreement were impermissibly restrictive because they prohibited him from providing services that Coloplast never actually provided but only "contemplated" providing. He argues that "[b]ecause the law of restrictive covenants in Georgia is a matter of public policy, the effect of the arbitral award in this case was to sanction a clear violation of the public policy of this State; something that the courts of this State cannot do."

The employment agreement specified that any dispute would be governed by the American Arbitration Association's Commercial Arbitration Rules and the Federal Arbitration Act, 9 USC § 1 et seq. As the superior court recognized, "the FAA rather than Georgia law controls confirmation of an arbitration award made pursuant to the FAA. [Cit.]" *Adage, Inc. v. Bank of America, N.A.*, 267 Ga. App. 877, 878 (1) (600 SE2d 829) (2004). When

> a transaction out of which an arbitration arises involves commerce within the meaning of the Federal Arbitration Statute, the state law and policy with respect thereto must yield to the paramount federal law. Further, the Federal Arbitration Act creates a body of federal substantive law[, and] if a state court has jurisdiction to vacate an award, federal law rather than state law governs the vacation of the award.

(Citations and punctuation omitted.) *Joyner v. Raymond James Financial Svcs.*, 268 Ga. App. 835, 837 (1) (602 SE2d 871) (2004).

It is well established under both federal and Georgia law that "judicial review of an arbitration award is among the narrowest known to the law. [Cit.]" (Punctuation omitted.) *Gupta v. Cisco Systems*, 274 F3d 1, 3 (1st Cir. 2001). See *B.L. Harbert Intl., LLC v. Hercules Steel Co.*, 441 F3d 905, 910 (11th Cir. 2006).

> Georgia law is clear that the authority of courts to review an arbitration award is very limited; courts cannot inquire into the merits of an arbitrable controversy; arbitrators are free to award on the basis of broad principles of fairness and equity; and an arbitrator need not make findings or state the

reasons in support of the award. Indeed, so as not to frustrate the very purpose of arbitration (which is to avoid litigation), a trial court's role is severely curtailed.

(Citations, punctuation and footnotes omitted.) *Barron Reed Constr. v. 430, LLC,* 275 Ga. App. 884, 887 (2) (622 SE2d 83) (2005). In addition, under both federal and Georgia law, when a motion to vacate or confirm an arbitration award is before the court, the court may not inquire into the merits of the dispute or consider the sufficiency of the evidence. *Doman v. Stapleton,* 272 Ga. App. 114, 117 (611 SE2d 673) (2005).

This court reviews a superior court's confirmation of an arbitration award based on the FAA as found in 9 USC § 10. *Southwire Co. v. American Arbitration Assn.,* 248 Ga. App. 226, 227 (1), n. 5 (545 SE2d 681) (2001). In addition to the four factors listed in 9 USC § 10 not relevant here, three nonstatutory grounds exist. The award may be reversed if it is arbitrary and capricious, contrary to public policy, or made in manifest disregard of law. *Hercules Steel,* supra, 441 F3d at 910.

Because Malice alleges that the arbitrator disregarded Georgia law, we first address the meaning under federal law of the phrase "manifest disregard of law."[3] We next must determine the "law" that Malice contends the arbitrator manifestly disregarded and apply it to the facts in this case.

Under federal law, the term "manifest disregard of law" is a judicial creation. *Progressive Data Systems v. Jefferson Randolph Corp.,* 275 Ga. 420, 421 (568 SE2d 474) (2002).

> The two-prong test for ascertaining whether an arbitrator has manifestly disregarded the law has both an objective and a subjective component. We first consider whether the governing law alleged to have been ignored by the arbitrator[ ] was well defined, explicit, and clearly applicable. We then look to the knowledge actually possessed by the arbitrator. The arbitrator must appreciate the existence of a clearly governing legal principle but decide to ignore or pay no attention to it. Both of these prongs must be met before a court may find that there has been a manifest disregard of law.

---

[3] The term "manifest disregard for the law" is now found in Georgia law as well, having been added to OCGA § 9-9-13 (b) in 2003 as a ground for vacating an arbitrator's award. Ga. L. 2003, p. 820, § 2. See OCGA § 9-9-13 (b) (5).

(Citations and punctuation omitted.) *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F3d 200, 209 (2nd Cir. 2002). An error in interpreting the applicable law does not constitute "manifest disregard." The applicable law must have been deliberately ignored. *Montes v. Shearson Lehman Bros.*, 128 F3d 1456, 1461 (11th Cir. 1997).

According to Malice, "the law" the arbitrator manifestly disregarded is Georgia's public policy against restraint of trade. He maintains that the restrictive covenants are overbroad in prohibiting him from doing business in products Coloplast never produced or sold and in services in which Coloplast never engaged, but also those Coloplast only "contemplated."

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.

(Citations omitted.) *Muschany v. United States*, 324 U. S. 49, 66 (65 SC 442, 89 LE 744) (1945).

In a broad, general sense, Georgia does have a public policy prohibiting the restraint of trade; contracts forbidding all competition violate Georgia's public policy and therefore are void. *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). But restrictive covenants in employment contracts may work only a partial restraint of trade, and they are enforceable if they are reasonable, founded on valuable consideration, reasonably necessary to protect the employer's legitimate business interests, and do not unduly prejudice the public's interest. *Riddle v. Geo-Hydro Engineers*, 254 Ga. App. 119, 120 (561 SE2d 456) (2002).

The provision at issue is found in paragraph 6.2 of Malice's employment contract. It provides, in pertinent part, that if Coloplast decides to exercise its right to invoke the clause, after notice, for two years after termination of his employment Malice

> shall not, directly or indirectly, within the continental United States of America (the "territory"), without the specific prior written consent of [Coloplast's] president, . . . render executive services which are reasonably related, substantially similar or identical to the services which [he] rendered to the company, to that part of any person or entity whose business is directly competitive with the business conducted, or to [his] knowledge as of the date hereof contemplated, by company's Breast Care Division (but not any other part or division of company).

The nonsolicit clause, paragraph 6.3 of the contract, is similar in duration and scope.

Far from ignoring Georgia's law on restrictive covenants and contract interpretation, the arbitrator carefully considered both. In his decision, the arbitrator stated the principles of Georgia law to be applied and cited Georgia authority for his decision. It is therefore clear that the arbitrator knew the applicable Georgia law and applied it.

Under Georgia law, most restrictive covenants in employment contracts are examined under strict scrutiny because they usually involve parties of uneven bargaining power. *Swartz Investments, LLC v. Vion Pharmaceuticals*, 252 Ga. App. 365, 369 (2) (556 SE2d 460) (2001). Generally, they are drafted by the employer, and the employee has a "take it or leave it" choice. But Malice acknowledged in the document itself that the covenants were "reasonable, appropriate and necessary to protect the interests of the company, and do not cause undue hardship on executive."

Here, the provisions were not a part of a contract of adhesion. The arbitrator found that Malice had substantial bargaining power when he negotiated the agreements. Malice admitted at the arbitration hearing that he negotiated for a club membership as part of his employment contract. As discussed above, he also negotiated for additional severance pay in return for executing the noncompete covenants. The arbitrator's conclusion that the covenants were based upon valuable consideration was supported by facts in evidence. *Riddle*, supra, 254 Ga. App. at 120.

The arbitrator rejected Malice's characterization of his position that he was simply a "plant manager in Marietta." Coloplast did business worldwide, and Malice traveled extensively in the course of carrying out his duties. His duties included business forecasting and product development. He had access to Coloplast's customer lists, trade secrets, and business planning at the highest levels. Although the "territory" described is broad — the entire United States — the restrictions were tailored and narrowed appropriately to protect legitimate interests.

The business activity was suitably narrowed as well. Malice agreed to refrain from selling to or soliciting only a "competitive business" at the time the agreement was executed, i.e., only those competing with business actually conducted by Coloplast's Breast Care Division, or that Malice actually knew at the time he executed the agreement, were "contemplated" by that division, at that specific time. Malice was not prohibited from conducting any business Coloplast "contemplated" and rejected before he signed the employment agreement. It is therefore apparent that the arbitrator's conclusion that the temporary restrictions were reasonably designed to protect

Coloplast's legitimate business interests was amply supported by evidence presented, as well.[4] See *Riddle*, supra, 254 Ga. App. at 120.

Finally, given that Malice negotiated successfully for several substantially increased benefits in return for the restrictive covenants, we find it inconceivable that the restrictive covenants Malice agreed to and for which he negotiated compensation in return could work undue hardship on Malice or prejudice the public. See *Riddle*, supra, 254 Ga. App. at 120. Having satisfied all three factors in *Riddle*, the arbitrator's award does not violate Georgia's public policy against restraint of trade.

The trial court recognized that Malice's contention is "nothing more than an assertion that the arbitrator erroneously interpreted the applicable law." That contention must fail because it is not one of the grounds on which an arbitrator's award may be reversed. *Gupta*, supra, 274 F3d at 3; *Hercules Steel*, supra, 441 F3d at 910. We therefore agree with the arbitrator and the superior court that the restrictive covenants are enforceable and that the arbitration award therefore does not exhibit "manifest disregard of law." The trial court therefore did not err in confirming the award.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 23, 2006 — 

*Arnall, Golden & Gregory, Allen I. Hirsch, Debra M. Buster*, for appellant.

*Welch & Spell, LeRoy P. Spell, Jr.*, for appellee.

---

[4] We agree with the arbitrator that the number of potential competitors Malice knew about at the time the contract was executed is irrelevant to the issue of enforcement.