A10A1614. McKINLEY v. COLISEUM HEALTH GROUP, LLC.
(708 SE2d 682)

MILLER, Presiding Judge.

Coliseum Health Group, LLC d/b/a Coliseum Health Group ("Coliseum") sued its former employee, Dr. Mary E. McKinley, for breach of contract seeking to recover $49,907 allegedly overpaid to McKinley under their employment agreement. McKinley timely answered and counterclaimed asserting that she was entitled to a refund of $46,559.53 based upon the claim that unauthorized fees and overcharges had been assessed against her in the amount of $96,466.53.[1] Cross-motions for summary judgment followed based upon the express terms of the Agreement. The trial court granted summary judgment in favor of Coliseum and against McKinley. McKinley appeals, contending that the trial court erred: (i) in construing the parties' agreement as authorizing Coliseum to charge McKinley with management fees, collection fees, and for allowances

---

[1] By her amended counterclaim McKinley averred that she had been overcharged fees in the amount of $76,684.46 and allowances for bad debts which had actually been collected in the amount of $19,782.07.

for bad debts actually collected, and (ii) in considering inadmissible parol evidence. We discern no error and affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we review the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Footnotes omitted.) *Coleman v. Arrington Auto Sales & Rentals*, 294 Ga. App. 247 (669 SE2d 414) (2008).

So viewed, the evidence shows that in February 2002, McKinley and Coliseum entered into a Physician Employment Agreement (the "Agreement") commencing on August 1, 2002 and terminating on September 30, 2006. Exhibit B of the Agreement provided that McKinley would be paid "the difference between "(a) the product of Ninety percent (90%) of the Practice's Precompensation Earnings, and (b) Physician Expenses.' "[2] Exhibit B further defined "precompensation earnings" as the difference between net practice revenues (defined as all gross revenues) and practice operating expenses. In turn, the Agreement defined practice operating expenses as

> all direct and indirect non-capital expenses incurred subsequent to the Effective Date in the day-to-day management and operation of the Practice and any of its satellite offices (all in accordance with Employer's general accounting policies and procedures), including, without limitation, . . . allowances for bad debts.

Also defined as practice operating expenses by the Agreement were salaries, benefit expenses, rent, taxes, utility expenses, office and medical supplies, premises and general liability insurance, repairs to the building, and professional liability insurance.

By the Agreement, Coliseum also agreed to provide McKinley a monthly draw in the amount of $12,083, commencing on August 1, 2002, as an advance towards her compensation. Upon the expiration of the Agreement amounts received in this manner were to be reconciled "within 30 calendar days" of the expiration or earlier termination of the Agreement. If the amount received by McKinley under the Agreement was in excess of the amount due, then the

---

[2] Stated otherwise, McKinley was to be paid (90% times Precompensation Earnings) minus (Physician's Expenses).

amount of the excess was owed by McKinley to Coliseum.

On September 30, 2006, the term of the Agreement between Coliseum and McKinley ended, and Coliseum reconciled her account. The reconciliation reflected that McKinley received $49,907 in excess of the physician compensation she earned. Subsequently, Coliseum sent demand letters to McKinley for payment in full or repayment arrangements for the amount owed. The instant litigation followed McKinley's failure to comply with the demand letters.

1. McKinley contends that the trial court erred in construing the Agreement as authorizing Coliseum to charge management fees, collection fees, and for bad debts actually collected. We disagree.

The construction of a contract, including the existence or nonexistence of any ambiguities in the contract, presents a question of law for the court, which this Court reviews de novo. *Reynolds Properties, Inc. v. Bickelmann*, 300 Ga. App. 484, 487 (685 SE2d 450) (2009); *Coleman*, supra, 294 Ga. App. at 249 (2).

In Georgia, the construction of a contract involves three steps.

> At least initially, construction is a matter of law for the court. First, the trial court must decide whether the contract language is clear and unambiguous. If it is, the trial court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation and punctuation omitted.) *Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Ga.*, 301 Ga. App. 367, 368 (3) (687 SE2d 640) (2009).

Here, the trial court properly granted summary judgment for Coliseum and against McKinley upon resolving ambiguity in the Agreement based on the rules of contract construction and parol evidence. In this regard, the Agreement broadly defined the term "Practice Operating Expense," as including "all direct and indirect non-capital expenses incurred," "all in accordance with [Coliseum's] general accounting policies and procedures," and "without limitation" those for "bad debts," incurred prior to the expiration of the employee physician's contract. Significantly, however, terms "general accounting policies and procedures" and "bad debts" were not defined in the Agreement. As such, these terms were ambiguous and required explanation. Under the rules of contract construction,

"parol evidence is admissible to explain an ambiguity in a written contract, although such evidence is inadmissible to add to, take from, or vary the writing itself." (Citation omitted.) *Andrews v. Skinner*, 158 Ga. App. 229, 230 (279 SE2d 523) (1981). Here, Coliseum presented the parol evidence of its senior financial analyst who deposed that at the time of McKinley's employment, the standard procedure was to declare a "debt" a "bad debt" 150 days after the date medical services were provided. Such deponent also stated that "credit[ing]" employee physicians with bad debts collected after the expiration of the employee physician's contract was not standard procedure at the time McKinley left the practice. Moreover, the record reveals that Coliseum's practice administrator met with McKinley frequently regarding her compensation and explained the "Management Fee, amounts for collection, and amounts for bad debt . . . being deducted from her compensation and answered all of [her] questions regarding the same."

The broad and inclusive language of the Agreement itself constitutes evidence that the parties intended that physician's compensation be reduced by deductions for the day-to-day management and operation of the practice — these including management fees, collection fees, and bad debt fees, including bad debts for which collection was later received. Coliseum's continued deduction of such amounts throughout the four-year term of the Agreement and McKinley's acceptance of the benefits of the arrangement for four years, without objection, is additional evidence that the parties intended that the complained of fees be charged against physician compensation. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them. *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962)." (Punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 541 (2) (466 SE2d 27) (1995).

Under these circumstances, we conclude that the trial court's grant of summary judgment for Coliseum and against McKinley was proper. *Andrews*, supra, 158 Ga. App. at 230.

2. As stated in Division 1, parol evidence was admissible to explain ambiguity in the Agreement related to Coliseum's general accounting procedures as these related to charges against McKinley's compensation for management and bad debt collection. McKinley's claim that such evidence was inadmissible is therefore without merit.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED MARCH 25, 2011.

*Jones, Cork & Miller, Hubert C. Lovein, Jr.*, for appellant.

*Thomerson & Macchiaverna, Michael J. Thomerson*, for appellee.