A11A1079. MURPHREE et al. v. YANCEY BROTHERS COMPANY.
(716 SE2d 824)

DILLARD, Judge.

Edward William Murphree and his employer, Flint Equipment Company ("Flint"), appeal the trial court's grant of an interlocutory injunction to Yancey Brothers Company ("Yancey") to enforce a restrictive covenant contained in the employment contract Murphree had with his former employer. Murphree and Flint contend that the trial court erred in finding the restrictive covenant valid and enforceable. For the reasons set forth infra, we affirm the trial court's findings related to the restrictive covenant, as well as its grant of the interlocutory injunction against Murphree and Flint.

The record shows that in 1993, Murphree began working for Carlton Company in Albany, Georgia, and made the transition into heavy-equipment sales (e.g., bulldozers, excavators, backhoes) six years later. Murphree worked in this position until 2002, when Yancey purchased Carlton Company. At that point, in order to continue his employment with Yancey, Murphree signed a contract that contained a restrictive covenant, which provided as follows:

> The Employee agrees that while in the employment of the Company, and for a period of two (2) years following his/her termination of employment, with or without cause, he/she will not, for the purpose of competing with the Company, in

---

any way, directly or indirectly, solicit, divert, or take away, or attempt to solicit, divert or take away, any of the customers, clients, accounts or business of the Company serviced or procured by the Employee, in whole or in part, at any time during the last 2 years of his/her employment. The temporal periods of this covenant shall be reduced to the actual length of employment where it is less than 2 years.

Thereafter, Murphree was employed by Yancey in the same capacity—as the predominant heavy-equipment salesman in his southwest Georgia territory—until 2010.

Toward the end of his tenure with the company, Murphree became dissatisfied with Yancey after repeatedly speaking with management about various and sundry concerns. These unaddressed concerns eventually motivated Murphree to meet with representatives from Flint, one of Yancey's top competitors, in June 2010. Murphree claimed that during his employment discussions with Flint, he did not disclose his Yancey customer list but did discuss his general sales territory. And in the end, Flint expressed its desire to employ—and in fact did employ—Murphree in much of the same southwest Georgia territory, selling the same types of heavy equipment offered by Yancey.[1]

When Murphree gave his resignation to Yancey on July 13, 2010, his supervisor reminded him of the nonsolicitation agreement he had signed with the company. This supervisor then asked Murphree whether he already had another job lined up, and Murphree replied that he had not yet decided which of a few opportunities to pursue. But it is undisputed that Murphree did *not* have multiple options and had, at that point, already decided to accept a position with Flint.[2]

Additionally, prior to leaving the employ of Yancey (and before returning his company-issued laptop), Murphree used a thumb-drive to copy a number of company files that were later transferred to his Flint-issued laptop. According to Murphree, he only intended to remove personal pictures and other documents from his Yancey laptop but, inexplicably, these particular files would not copy alone and he therefore decided to copy the entirety of his work computer's documents folder. Murphree admitted that some of the files that were copied and later transferred to his Flint laptop contained

---

[1] Flint was aware of Murphree's employment contract with Yancey and assured Murphree that if an issue ever arose regarding the restrictive covenant, the company would handle it.

[2] It is likewise undisputed that Murphree failed to apprise his Yancey supervisor that he had even been in negotiations with Flint.

proprietary customer information that belonged to Yancey.[3]

And then, after starting his employment with Flint, Murphree contacted his former Yancey clients to inform them that he had left Yancey to work for its leading competitor, and he submitted heavy-equipment bids to some of these old clients on behalf of Flint. It is undisputed that the proprietary information copied from Murphree's Yancey laptop to his Flint laptop concerned these very same customers, with whom Murphree had spent years cultivating a relationship on behalf of Yancey.[4]

When Yancey learned that Murphree was working for Flint and contacting his former clients, the company sent a letter to Murphree again reminding him of the restrictive covenant in his employment contract; however, Murphree gave no indication that he would abide by the agreement. Accordingly, Yancey thereafter filed a complaint for injunctive relief and damages against Murphree,[5] alleging, inter alia, that Murphree was in violation of the employment agreement and had misappropriated trade secrets by copying proprietary information prior to his departure from the company.[6] And finding the employment agreement's restrictive covenant reasonable and enforceable, the trial court granted the interlocutory injunction to enforce the terms of the agreement and prohibit the continued or future misappropriation of Yancey's trade secrets. This appeal by Murphree and Flint follows.[7]

At the outset, we note that the decision of whether or not to grant equitable relief (such as an interlocutory injunction) "is generally a matter within the sound discretion of the trial court[,]" and the trial court's decision should be sustained on appeal when

---

[3] Yancey produced an expert in computer forensics who testified that he did not believe Murphree had actually copied all of the files contained in his "My Documents" folder as claimed. Rather, it appeared to the expert that only 2,000 of Murphree's approximately 4,000 files were copied, including the proprietary files now at issue. Murphree, however, presented the testimony of a family member who claimed to have helped Murphree with the file transfer just as it was described by Murphree.

[4] The relevant computer files contained the names of Yancey customers, their buying history, the quotes given to them on machine sales, pricing and merchandising programs, and discounts. And Murphree testified that part of cultivating a sales relationship with his clients involved keeping up with their heavy-equipment purchases, remaining in touch, and knowing when his clients would need to replace their machines.

[5] Flint later intervened in the action.

[6] Yancey learned that Murphree had transferred the proprietary information to a thumb-drive after the company employed an expert in computer forensics to examine the laptop's hard drive.

[7] See Pittman v. Harbin Clinic Professional Ass'n, 263 Ga. 66, 66 (428 SE2d 328) (1993) (per curiam) (holding that Court of Appeals had jurisdiction when, "[a]lthough the parties sought equitable relief, both the orders enjoining the partners from violating their contracts and the orders denying the injunctive relief were secondary to the principal issue of the construction of the contracts—an issue of law" (citation omitted)).

there has been no abuse of that discretion.[8] Nevertheless, the reasonableness of a restrictive covenant is a question of law, which is subject to de novo review.[9] Moreover, restrictive covenants that are ancillary to employment contracts "receive strict scrutiny and are not blue-penciled[.]"[10] This is because "it is generally true in the employer/employee relationship that the employee goes into a transaction such as this at a great bargaining disadvantage" and "does so in exchange for the opportunity to have [a] job."[11] With these guiding principles in mind, we will now address Murphree and Flint's arguments.

1. Murphree and Flint argue that, contrary to the trial court's finding, the restrictive covenant at issue is invalid and unenforceable because it fails to limit or define the scope of activity prohibited and that, accordingly, the trial court erred in granting an interlocutory injunction. We disagree.

In determining the legality of a restrictive covenant, "a court may consider the nature and extent of the business, the situation of the parties, and all other relevant circumstances."[12] The reasonableness of the restraints imposed is a question of law, and "the courts have established a three-element test of duration, territorial coverage, and scope of prohibited activity" to determine reasonableness.[13]

---

[8] *E.g., Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553, 557 (2) (501 SE2d 501) (1998) (citation and punctuation omitted); *see also Trujillo v. Great Southern Equipment Sales, LLC*, 289 Ga. App. 474, 475-76 (657 SE2d 581) (2008) ("The decision whether to grant or deny interlocutory injunctive relief is in the discretion of the trial court and we will not disturb the trial court's order in the absence of a manifest abuse of that discretion." (citation and punctuation omitted)).

[9] *See Reardigan v. Shaw Indus., Inc.*, 238 Ga. App. 142, 143 (1) (518 SE2d 144) (1999); *see also McKinley v. Coliseum Health Group, LLC*, 308 Ga. App. 768, 770 (1) (708 SE2d 682) (2011) ("The construction of a contract . . . presents a question of law for the court, which this Court reviews de novo." (citations omitted)).

[10] *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 289 (498 SE2d 346) (1998) (citation omitted); *see also Malice v. Coloplast Corp.*, 278 Ga. App. 395, 400 (629 SE2d 95) (2006) ("Under Georgia law, most restrictive covenants in employment contracts are examined under strict scrutiny because they usually involve parties of uneven bargaining power." (citation omitted)). We note that on May 11, 2011, the Georgia General Assembly amended OCGA § 13-8-53 to permit blue penciling, in that "a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." OCGA § 13-8-53 (d). But the amended Code only applies to contracts entered into on or after May 11, 2011. *See* Ga. L. 2011, p. 399, § 5.

[11] *Baggett*, 231 Ga. App. at 290; *see also Malice*, 278 Ga. App. at 400 ("Generally, [restrictive covenants] are drafted by the employer, and the employee has a 'take it or leave it' choice.").

[12] *Reardigan*, 238 Ga. App. at 143 (1) (citation omitted).

[13] *Id.* (citation omitted); *see also Kuehn v. Selton & Assocs., Inc.*, 242 Ga. App. 662, 664 (1) (530 SE2d 787) (2000) ("To be reasonable, [a restrictive covenant] must be strictly limited as to time and territorial effect." (citation omitted)). In addition to being reasonable, restrictive covenants must also be "founded on valuable consideration, reasonably necessary to

It is this last element that Murphree and Flint argue has not been satisfied by the restrictive covenant at issue.[14]

The restrictive covenant in the case sub judice prohibits the employee from, for purposes of competing with Yancey, either directly or indirectly soliciting, diverting, or taking away (or attempting to do so) "any of the customers, clients, accounts or business of the Company serviced or procured by the Employee, in whole or in part, at any time during the last 2 years of his/her employment." Murphree and Flint argue that this language fails to apprise him of what activities would be considered competitive and that, although he engaged in heavy-equipment sales for Yancey, the company also sells other products and provides other services.[15] We find this argument unavailing.

It is well established that an employer "has a protectible interest in the customer relationships its former employee established and/or nurtured while employed by the employer" and that an employer is thus "entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer."[16] Indeed, this is the very nature of the activities prohibited by a nonsolicitation clause, which differs from a noncompete clause.[17]

And here, this type of activity is exactly what Yancey sought to prohibit through the clause at issue—the solicitation, diversion, or taking away of customers served or procured by a former employee.[18]

---

protect the employer's legitimate business interests," and cannot "unduly prejudice the public's interest." *Malice*, 278 Ga. App. at 399 (citation omitted).

[14] *See W.R. Grace & Co., Dearborn Division v. Mouyal*, 262 Ga. 464, 467 (2) (422 SE2d 529) (1992) ("As the group which the employer wishes to protect from solicitation by the former employees becomes more narrowly defined, the need for a territorial restriction expressed in geographic terms becomes less important." (citation omitted)); *see also Trujillo*, 289 Ga. App. at 478 (1) (holding that in absence of either a territorial restriction or a restriction limited to customers with whom former employee had contact, nonsolicitation provision was overbroad and unenforceable).

[15] There was evidence that in addition to heavy equipment, Yancey also sells novelty items (*e.g.*, toys, hats, t-shirts) and replacement parts for equipment, and sells and leases other products.

[16] *E.g., Mouyal*, 262 Ga. at 466 (2) (citations omitted).

[17] *See generally Baggett*, 231 Ga. App. at 295-96 (2) (c) (describing the different interests protected by the two types of restrictive covenants and the types of activities precluded by each).

[18] *Baggett*, 231 Ga. App. at 298 (3) (c) ("Upon the application of strict scrutiny, prohibiting the solicitation and diversion of clients is reasonable as is prohibiting the contact of clients." (footnote omitted)); *see Palmer & Cay of Ga., Inc. v. Lockton Cos.*, 280 Ga. 479, 480 (1) (629 SE2d 800) (2006) ("A court will enforce an agreement prohibiting an employee from pirating his former employer's customers served by the employee during the employment, at the employer's direct or indirect expense." (citation and punctuation omitted)); *see also Cobb Family Dentistry, P.C. v. Reich*, 259 Ga. 450, 450-51 (383 SE2d 891) (1989). *Compare Howard Schultz & Assocs. of the Southeast, Inc. v. Broniec*, 239 Ga. 181, 184 (2) (236 SE2d 265) (1977) (holding, in context of a covenant not to compete, that it was unreasonable because the

And the use of "for the purposes of competing" served to qualify the type of solicitation that was prohibited.[19] Thus, this covenant prohibited Murphree from initiating affirmative action to compete with Yancey by contacting former customers,[20] but the clause would not have precluded him "from accepting unsolicited business from the forbidden clients."[21] Accordingly, the trial court did not err in holding that the restrictive covenant was reasonable[22] and, likewise, did not abuse its discretion by granting an interlocutory injunction to enforce same.[23]

2. Because we have upheld the trial court's grant of the interlocutory injunction pursuant to the reasonableness of the nonsolicitation clause at issue, we need not address Yancey's argument (or the appellants' arguments in reply) that Murphree's misappropriation of trade secrets and confidential information provided an independent, separate basis for issuing the interlocutory injunction.

Accordingly, for all the foregoing reasons, we affirm the trial court's finding that the restrictive covenant was reasonable, as well as its accompanying grant of the interlocutory injunction.

---

employee was prohibited from working in any capacity for a competitor and because it failed "to specify with any particularity the nature and kind of business which is or will be competitive with the employer").

[19] *Compare Riddle v. Geo-Hydro Engineers, Inc.*, 254 Ga. App. 119, 120 (561 SE2d 456) (2002) (holding that nonsolicitation covenant was overbroad when it did not limit purpose for which former employee could not solicit clients, prohibited former employee from selling unrelated items, and went beyond what was necessary to protect former employer's business interests); *Advance Technology Consultants, Inc. v. RoadTrac, LLC*, 250 Ga. App. 317, 322 (4) (551 SE2d 735) (2001) (holding that covenants were unenforceable when "in neither [was] the prohibition against contacting or pursuing [former employer's] clients restricted to efforts *competitive* with [former employer], but each simply prohibit[ed] contact for any purpose" (emphasis supplied)).

[20] *See Baggett*, 231 Ga. App. at 298 (3) (c); *see also Sysco Food Svcs. of Atlanta, Inc. v. Chupp*, 225 Ga. App. 584, 588 (2) (484 SE2d 323) (1997) ("An 'indirect' solicitation occurs when the former employee undertakes 'some affirmative action on his part that could be considered a solicitation in the broadest possible sense.' " (citation and punctuation omitted)).

[21] *Baggett*, 231 Ga. App. at 298 (3) (c) (footnote omitted). *Cf. Waldeck v. Curtis 1000, Inc.*, 261 Ga. App. 590, 592 (583 SE2d 266) (2003) ("[A] covenant prohibiting a former employee from merely accepting business, without any solicitation, is not reasonable." (footnote omitted)).

[22] *See Whaley v. Alco Standard Corp.*, 253 Ga. 5, 6 (315 SE2d 654) (1984) (holding that nonsolicitation covenant was "reasonable in the scope of its prohibited activities" when it restricted "the solicitation of customers who were customers of [the] employer at the time of termination"). *Cf. Sysco Food Svcs. of Atlanta*, 225 Ga. App. at 588 (2) (holding that court incorrectly struck down nonsolicitation covenant as overly broad when "the plain language of the covenant and the affirmative conduct rule . . . require that the salesperson in question . . . actively participate in the indirect solicitation of his *own* former account").

[23] *See Marcoin, Inc. v. Waldron*, 244 Ga. 169, 171 (1) (259 SE2d 433) (1979) (holding that trial court did not err in denying injunction when former employee had taken no affirmative action to solicit clients from former employer, and further holding that "the words 'solicit,' 'divert' and 'take away' require affirmative action on the part of an employee before a restrictive covenant prohibiting such conduct is violated").

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 21, 2011.

*Watson Spence, Christopher S. Cohilas*, for appellants.
*Spurlin & McCorvey, John C. Spurlin, Nelson, Mullins, Riley & Scarborough, Daniel M. Shea, Matthew T. Gomes*, for appellee.