**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 10, 2015**

# In the Court of Appeals of Georgia

A14A2141. EARLY et al. v. MIMEDX GROUP, INC.

McMILLIAN, Judge.

We granted this interlocutory appeal to determine whether a provision in a Consulting Agreement that requires a designated employee of the Consultant to "devote her full working time" to the performance of the Consultant's duties under the Agreement constitutes an illegal and unenforceable restraint of trade, and if not, whether the provision is enforceable against the employee named in the agreement, even though she did not expressly agree to be bound by the provision at issue. We answer the first question in the affirmative and thus need not reach the second question.

Pertinent to these issues, the record shows[1] that appellee MiMedx Group, Inc. ("MiMedx") develops, manufactures, and markets patent protected biomaterial-based products, including bioimplants made from human amniotic membrane. Appellant Ryanne Early[2] was experienced in this field, and had worked for a "now defunct emerging competitor of MiMedx." Sometime around January 2011, MiMedx and Early entered into negotiations about a possible "business relationship," and later that month MiMedx and Early, as founder and president of ISE Professional Testing & Consulting Services, Inc. ("ISE"), entered into a "Mutual Confidentiality and Nondisclosure Agreement" ("Nondisclosure Agreement") prohibiting Early from disclosing trade secrets and confidential information, which might be revealed to her during negotiations with MiMedx.

---

[1] This case comes to us from the denial of a motion for judgment on the pleadings. Accordingly, our view of the record is limited to the pleadings and exhibits that have properly been incorporated into the pleadings. See *Printis v. Bankers Life Ins. Co.*, 256 Ga. App. 266 (568 SE2d 85) (2002).

[2] At the time the parties negotiated and executed the Consulting Agreement, Early was known by the last name Hernandez. However, she married in January 2012, and changed her name to Early. Although the Consulting Agreement, initial pleadings and other documents in the record bear the name Hernandez, the notice of appeal was filed under the name Ryanne Early and the parties refer to her as such. Thus, to maintain clarity and for ease of reference, we will use the name Early throughout this opinion.

A short time later,[3] MiMedx and ISE entered into a Consulting Agreement whereby ISE, as the named "Consultant," would provide product, research and development consulting services to MiMedx related to its amnion products. Paragraph 2 of the Consulting Agreement named Early as the ISE employee who would provide consulting services to MiMedx, and further specified that Early would "devote her full working time (not less than forty (40) hours per week) to [the] performance of Consultant's duties hereunder" ("full-working-time provision").

MiMedx terminated the Consulting Agreement in December 2011, and subsequently filed a verified complaint against, inter alia, Early and ISE (collectively referred to as "appellants") seeking damages, specific performance and injunctive relief under the Consulting Agreement and the separate Nondisclosure Agreement.[4] Although the complaint set out numerous causes of action against both ISE and Early and specifically alleged that Early had failed to devote her full working time to the performance of the consulting duties under the Consulting Agreement, it did not set out a separate cause of action for breach of that Agreement.

---

[3] The Consulting Agreement states it was executed February 7, 2010, but it appears undisputed that it was executed in 2011, not 2010.

[4] The Consulting Agreement also contained confidentiality provisions.

Appellants answered and filed a counterclaim seeking payment for the consulting services which were rendered in December 2011. A short time later, MiMedx filed an amended complaint asserting a cause of action against ISE and Early for breach of the Consulting Agreement. Although MiMedx did not specifically allege which provisions of the Consulting Agreement had been breached, the amended complaint again alleged that Early had failed to devote her full working time to the performance of the consulting duties under the Consulting Agreement and had instead misappropriated MiMedx's trade secret and confidential information to start a rival company.

Appellants subsequently filed a motion for judgment on the pleadings,[5] contending, among other things, that the full-working-time provision[6] of the Consulting Agreement was void and unenforceable as either a general or partial

---

[5] OCGA § 9-11-12 (c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

[6] Appellants indicated at the hearing on the motion that they had gleaned from discovery that MiMedx's claim was that ISE and Early had breached the full-working-time provision by misappropriating confidential and propriety information to set up a rival company while the Consulting Agreement remained in effect. As stated above, this allegation also appears in the pleadings.

4

restraint of trade.[7] Following a hearing, the trial court denied appellants' motion for judgment on the pleadings without explanation, and appellants filed an application seeking interlocutory review of that order in this Court. We granted appellants' application, and this appeal followed. As more fully set forth below, we now reverse.

It is well settled that,

> [o]n a motion for judgment on the pleadings, we treat all well-pled material allegations by the nonmovant as true and all denials by the movant as false. Although such motion is, by definition, limited to the pleadings, a trial court may also consider exhibits that have been incorporated into the pleadings. If, in reviewing these documents, there is a complete failure by the plaintiff to state a cause of action, then the defendant is entitled to judgment as a matter of law.

(Footnotes omitted.) *Printis v. Bankers Life Ins. Co.*, 256 Ga. App. 266, 266 (568 SE2d 85) (2002). However, we are mindful that "[a] motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment." (Citation and punctuation omitted.) *Sherman v. Fulton County Board of Assessors*, 288 Ga. 88, 90 (701 SE2d 472) (2010).

---

[7] The Agreement did not contain explicit post or in-term non-competition or non-solicitation provisions.

1. Before turning to the merits of this appeal, we must first address MiMedx's contention that appellants are barred from challenging the enforceability of the Consulting Agreement because they failed to raise this issue by way of a responsive pleading below, and because appellants admitted that the Consulting Agreement was valid and enforceable in their counterclaim seeking payment for the consulting services that were rendered in December 2011.

(a) MiMedx first asserted its claim for breach of the Consulting Agreement in its amended complaint, but did not specify which provision of the Agreement was allegedly breached. Appellants did not file an answer to the amended complaint, but raised the issue of the enforceability of Paragraph 2 of the Consulting Agreement by way of a motion for judgment on the pleadings. This was sufficient. As we have held on numerous occasions, a defendant "is not required to file an answer to an amended complaint unless the trial court has affirmatively ordered such answer." (Citation and punctuation omitted.) *Hiner Transport, Inc. v. Jeter*, 293 Ga. App. 704, 705 (667 SE2d 919) (2008). See also OCGA § 9-11-12 (a). "This is consistent with the statement in OCGA § 9-11-8 (d) that averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." (Citations and punctuation omitted.) *Nat. City Mtg. v. Point Ctr. Fin., Inc.*, 306 Ga. App. 655, 656

(703 SE2d 113) (2010). Moreover, although MiMedx cites OCGA § 9-11-8 (c) for the proposition that affirmative defenses such as illegality must always be raised by way of a responsive pleading, our precedent clearly establishes that this rule is not as inflexible as MiMedx contends.

> The purpose of the requirement that affirmative defenses be pleaded is to prevent surprise and to give the opposing party fair notice of what he must meet as a defense. If it is not pleaded[,] it is generally held that the defense is waived, but if it is raised by motion, or by special plea in connection with the answer or by motion for summary judgment there is no waiver.

*Hardy v. Ga. Baptist Health Care Systems, Inc.*, 239 Ga. App. 596, 596-597 (1) (521 SE2d 632) (1999), and cites. Cf. *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815, 816-817 (3) (285 SE2d 203) (1981) (affirmative defense of illegality waived when it was neither included in a defensive pleading *nor* raised by written motion).

Moreover, by failing to raise this issue in the trial court, MiMedx itself has waived this issue on appeal. See *Phillips v. State Farm Mut. Auto. Ins. Co.*, 121 Ga. App. 342, 347 (2) (b) (173 SE2d 723) (1970) ("The lack of a pleading, if such there was, was not raised in the trial court and that issue is not properly before us. The

7

question was not submitted to the trial court, was not passed upon by that court, and thus under the law of this State cannot be considered by this court.") (citations and punctuation omitted). *Roberts v. Farmer*, 127 Ga. App. 237, 240-241 (5) (193 SE2d 216) (1972) (contention not made in the trial court cannot be considered on appeal).

(b) MiMedx also contends that appellants are barred from asserting this defense because they themselves sought to enforce the Consulting Agreement in their counterclaim and specifically pled that the Agreement was valid and enforceable. Again, however, MiMedx has waived the right to raise this contention by failing to raise it below. E.g., *Crippen v. Outback Steakhouse Intl.*, 321 Ga. App. 167, 170 (1) (741 SE2d 280) (2013).

Moreover, this contention fails on the merits. First, MiMedx had not asserted its claim for breach of the Consulting Agreement at the time the appellants made this allegation in their counterclaim, and thus it would be incongruous to say that they had admitted to a claim that had not yet been pled.[8]

---

[8] MiMedx asserted the following claims in its original complaint: Count I - Action for Specific Performance of the Confidentiality Agreement against ISE; Count II - Action for Specific Performance of the Consulting Agreement against ISE and Hernandez; Count III - Action for Injunction to Enforce Confidentiality Agreement against ISE; Count IV - Action for Injunction to Enforce the Consulting Agreement against ISE and Early; Count V - Action for Damages for Breach of the Confidentiality Agreement against ISE; Count VI - Action for Damages for Breach

8

Additionally, the Consulting Agreement contains the following severability clause: "[i]f any provision of this Agreement shall be declared invalid or illegal for any reason whatsoever, then notwithstanding such invalidity or illegality, the remaining terms and provisions of this Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provision had not been contained therein." It is well settled that the intent of the parties determines whether a contract is severable such that the remaining contract provisions will survive even if one or more provisions of the contract are void. *Capricorn Systems, Inc. v. Pednekar*, 248 Ga. App. 424, 428 (2) (d) (546 SE2d 554) (2001). And "[a] severability clause indicates the intent of the parties where the remainder of the contract can exist without the void portion." Id. Accordingly, "[v]oid restrictive covenants, which cannot be blue-penciled out of the contract, do not void the entire contract when the contract contains a severability clause . . . [Cits.] [T]he other contract terms survive

of the Confidentiality Agreement against ISE and Early; Count VII - Action for Misappropriation of Trade Secrets against Defendants; Count VIII - Action for Fraud in the Inducement against Early and ISE; Count IX - Action for Fraud against ISE and Early; Count X - Action for Fraudulent Business Expenses against ISE and Early; Count XI - Tortious Interference with Contractual Relations against Defendants; Count XII - Tortious Interference with Business Relations against Defendants; Count XIII - Conversion against Early and ISE; Count XIV - Unjust Enrichment against Early and ISE; and Count XV - Action against all Defendants for Imposition of a Constructive Trust.

the void terms, provided that the contract is severable."[9] Id. Applying these principles here, we find that appellants were not foreclosed from seeking to enforce parts of the Consulting Agreement while challenging other severable parts of that Agreement as unenforceable.

2. We now turn to the primary issue on appeal – whether the full-working-time provision is enforceable – and begin our analysis with Paragraph 2 of the Consulting Agreement which provides:

> *Duties*. In conjunction with designated MiMedx staff and under the direction and control of John Daniel, the Consultant shall provide consulting services to MiMedx. The nature and scope of the consulting services relate to product and research and development management related to amnion products. *Ryanne [Early] shall devote her full working time (not less than forty (40) hours per week) to [the] performance of Consultant's duties hereunder.*

(Emphasis supplied.)

---

[9] We note that in 2011, our General Assembly amended OCGA § 13-8-53 to permit blue-penciling, provided that "the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." OCGA § 13-8-53 (d). However, the amendment applies to contracts entered into on or after May 11, 2011. *Murphree v. Yancey Bros. Co.*, 311 Ga. App. 744, 747, n. 10 (716 SE2d 824) (2011).

Appellants contend that the full-working-time provision prohibits Early from performing any kind of work during the term of the agreement other than for MiMedx, and thus is an illegal restraint of trade. MiMedx, on the other hand, asserts that this is simple breach of contract action in that they paid ISE for 100 percent of Early's working time and that ISE (and Early) breached the Consulting Agreement by failing to deliver what they had promised. Moreover, MiMedx argues that the provision is no different from loyalty or best effort provisions requiring an employee to devote her time on the job to her employer's business.

We must begin our analysis by construing the full-working-time provision and what is required therein. That analysis has been aided in this case because the parties essentially agree on what the clause means – ISE contracted that Early would devote any working time to MiMedx's business, whether or not that working time was related in any way to the type of enterprise in which MiMedx is engaged.[10] We see no reason to construe the contract in a different or narrower way given that the parties agree on its terms. See *Head v. Scanlin*, 258 Ga. 212, 214 (1) (367 SE2d 546) (1988).

---

[10] For example, at oral argument and in the trial court, MiMedx asserted that Early would be prohibited from babysitting on the weekends or working in a bookstore.

Next, we turn to the question of whether a contract between a company and its customer that requires an employee to spend all her working time on the customer's business is an illegal restraint of trade or merely a loyalty provision. *Atlanta Bread Co. Intl., Inc. v. Lupton-Smith*, 285 Ga. 587, 589 (2) (679 SE2d 722) (2009) ("*Atlanta Bread Co. II*"), is particularly instructive. In that case, our Supreme Court considered whether an in-term covenant in a franchise agreement prohibiting the franchisee from operating competing stores was a loyalty provision or restraint of trade, and held that "[a] plain reading of the clause shows that it prohibits the [contractor] from engaging in a certain type of business during the terms of the parties' agreement and, thus, it is a partial restraint of trade designed to lessen competition." Id. at 589 (2).

Here, the full-working-time provision is in one sense broader than the clause in *Atlanta Bread Co. II* in that Early is prohibited from doing any work whether in competition with MiMedx or not, and yet is narrower in that any other ISE employee could perform work directly in competition with MiMedx. But MiMedx's breach of contract claim, as pled, is not seeking to prohibit other ISE employees from competing; rather, MiMedx is seeking damages from ISE for not requiring Early to conform to the terms of the contract. Thus, our analysis must focus on whether ISE can enforce the full-working-time provision against Early because if ISE is prohibited

12

from requiring Early to spend any and all working time on consulting for MiMedx, we fail to see how MiMedx can base a breach of contract claim on the same conduct. See *Dougherty, McKinnon & Luby, P.C. v. Greenwald, Denzik & Davis, P.C.*, 213 Ga. App. 891, 892 (1) (447 SE2d 94) (1994) ("[I]t is the legal effect of a contractual provision, not the parties' specified manner of enforcement of the provision, that determines enforceability vel non of a contract.") (citation and punctuation omitted); OCGA § 13-8-2 (a) (2) (contracts which are deemed contrary to public policy, including contracts in general restraint of trade, are unenforceable).

When viewed in that light, it is clear that under *Atlanta Bread Co. II*, the full-working-time provision is a restraint of trade, rather than a loyalty provision. Although MiMedx cites several cases that it contends demonstrate that this Court routinely reviews and upholds best effort, full-time, or similar "loyalty" provisions without regard to their anti-competitive effect, it appears that in none of those cases was this Court confronted with the issue presented here. It is well settled that "[q]uestions neither brought to the attention of the Court nor ruled upon will not be considered as precedent." *BIK Assocs. v. Troup County,* 236 Ga. App. 734, 738 (4) (513 SE2d 283) (1999). As our appellate courts "repeatedly cautioned[,] our decisions stand only for the points raised by the parties and decided by the court. Questions

13

which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (Citations and punctuation omitted.) *Holton v. Physician Oncology Svcs.,* 292 Ga. 864, 869-870 (2) (742 SE2d 702) (2013).[11] Accordingly, we agree with appellants that none of these cases preclude us from analyzing the full-time-working provision as a restrictive covenant when the terms of the provision, as agreed by the parties, would preclude Early from engaging in any work apart from the contract with MiMedx,

---

[11] For example, in *Crippen v. Outback Steakhouse Intl.,* the employee signed an employment agreement which contained a traditional non-compete provision that prevented him from holding an ownership interest in any other restaurant. The agreement also contained a provision very similar to the one at issue here, pursuant to which the employee promised to "'devote one hundred percent (100 %) of (his) full business time, attention, energies, and effort to the business affairs of the Company.'" 321 Ga. App. at 169 (1). But we did not address whether the restrictive covenant was illegal, finding that the employee had waived this contention by failing to raise it below. Id. at 169-170 (1). See also *Coffee Sys. of Atlanta v. Fox*, 226 Ga. 593, 594 (176 SE2d 71) (1970) (although factual recitation referred to contract provision requiring employee to "'use his best efforts to the exclusion of all other employment,'" the Supreme Court did not analyze the provision, nor does it appear that the employee challenged it); *McMurray v. Bateman*, 221 Ga. 240 (144 SE2d 345) (1965) (violation of a *post*-employment restrictive covenant, and not the "devote your full time" provision); *Shaw, Jr., Inc. v. Reynolds*, 221 Ga. App. 548 (472 SE2d 125) (1996) (appeal in a wrongful termination case where the only issue concerned whether certain evidence had been properly excluded); *Nikas v. Hindley*, 99 Ga. App. 194, 196-197 (108 SE2d 98) (1959) (wrongful termination in which there was no contention that the employee had violated the full-time provision and that provision was mentioned in the context of whether the contract lacked mutuality).

14

which restriction would clearly have an anti-competitive effect. See *Dougherty*, 213 Ga. App. at 892-893 (1) (analyzing liquidated damages provision as a restrictive covenant due to its anti-competitive effect).

In analyzing restrictive covenants, Georgia courts have distinguished between general and partial restraints of trade. See *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992); *Atlanta Bread Co. II*, 285 Ga. at 588 (1). While "contracts that generally restrain trade are void against public policy," id., covenants in partial restraint of trade are upheld "if the restraint imposed is not unreasonable, is founded on valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public." (Citation omitted.) *W. R. Grace & Co.,* 262 Ga. at 465 (1).

Appellants argue that because the full-working-time provision is designed to completely prohibit Early from working in any marketplace, it should be viewed as a general restraint of trade and declared void without further analysis. Pretermitting whether the provision is a general or partial restraint of trade, we find that even if viewed as a partial restraint of trade, the provision would be unenforceable. A partial restraint of trade is enforceable only if it is reasonable as to time, territory and scope. *Murphree v. Yancey Bros. Co.*, 311 Ga. App. 744, 747 (716 SE2d 824) (2011). In

15

making this determination, "'a court may consider the nature and extent of the business, the situation of the parties, and all other relevant circumstances.' [Cit.] The reasonableness of the restraints imposed is a question of law." Id. at 747 (1). In addition, Georgia courts have applied different levels of scrutiny based on the type of agreement that contains the restrictive covenant. *Swartz Investments, LLC v. Vion Pharmaceuticals, Inc.*, 252 Ga. App. 365, 368-369 (2) (556 SE2d 460) (2001). And it is important to note that although cases distinguish post-term restrictive covenants from in-term restrictive covenants, at least factually, courts "have made no distinction as to the level of scrutiny applied based on whether the restraint occurs during the term of the agreement or after the agreement has been terminated."[12] *Atlanta Bread Co. II*, 285 Ga. at 590 (3). See also *Atlanta Bread Co. Intl. v. Lupton-Smith*, 292 Ga. App. 14, 17-18 (1) (663 SE2d 743) (2008) ("*Atlanta Bread Co. I*").

Given the procedural posture, we lack the information necessary to determine the precise level of scrutiny which should be applied in this case; but it is not necessary for us to make that determination, because the full-working-time provision,

---

[12] We further note that even if we view this contract as one for services by an independent contractor instead of an employee, "'contracts for services by independent contractors' should be treated like 'employee covenants ancillary to employment contracts.'" (Citation omitted.) *Paragon Technologies, Inc. v. InfoSmart Technologies, Inc.*, 312 Ga. App. 465, 467 (718 SE2d 357) (2011).

16

which contains no limitation at all concerning either scope or territory, fails as a matter of law under any level of scrutiny. See *Atlanta Bread Co. I*, 292 Ga. App. at 18-19 (2) (in-term provision that would prevent franchisee from working in any capacity in the deli/bakery business, even as a janitor, was unreasonable and overbroad). See also *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 184 (2) (236 SE2d 265) (1977) (post-term covenant that restricts an employee from engaging in employment "in any capacity," is unreasonable and unenforceable); *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 639 (1) (261 SE2d 572) (1979) (restrictive covenant that fails to specify the business activities the employee is forbidden to engage in after his employment is unreasonable and unenforceable). *Atlanta Bread Co. II,* 285 Ga. at 591 (3) (a covenant that is not limited as to territory will be invalidated).

Accordingly, we find that the trial court erred in denying appellants' motion for judgment on the pleadings on the breach of contract claim based on an alleged violation of Paragraph 2 of the Consulting Agreement.[13]

---

[13] In so ruling, we emphasize that we do not express any opinion as to the other remaining claims in the case, which are not the subject of this appeal.

3. Based on the foregoing, it is unnecessary for us to consider appellants' remaining contention that the provision is unenforceable against Early as the alter ego of ISE.

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*